IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | |
|---|---|
| **CRAWL SPACE DOOR SYSTEM, INC.,** <br> d/b/a **CRAWL SPACE DOOR SYSTEMS, INC.** <br><br> Plaintiff, <br><br> v. <br><br> **WHITE AND WILLIAMS LLP** <br><br> Defendant. | Case No. 2:22-cv-00199-RCY-LRL |

## WHITE AND WILLIAMS LLP'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Defendant White and Williams LLP, by counsel, files this Reply in further support of its Motion to Dismiss the Amended Complaint of plaintiff Crawl Space Door System, Inc. d/b/a Crawl Space Door Systems, Inc. (hereinafter "Crawl Space"), and states as follows:

### I.  COMPULSORY COUNTERCLAIM

  A.  <u>The claims for legal malpractice and unpaid legal fees are related.</u>

The question at issue is whether Crawl Space was required to bring this malpractice claim as a compulsory counterclaim in the PA litigation, taking place in the United States District Court for the Eastern District of Pennsylvania. Accordingly, any such counterclaim could only have been brought in the Third Circuit. Moreover, Fed. R. Civ. P. 13(a) affects Crawl Space's ability to bring this claim in the first place and is thus substantive in nature.

The above notwithstanding, under either analysis, Crawl Space was required to bring this action as a compulsory counterclaim in the PA litigation. In the jurisdictions involved in this analysis, courts focus on the similarity of the factual and legal issues and the logical relationship between the claims. The Third Circuit clarifies this relationship through its "offshoot of the same

1

controversy" standard, while the Fourth Circuit simply builds on this framework by analyzing whether the same evidence would be used in both cases, and whether *res judicata* would bar the suit.

Crawl Space's argument that different factual and legal issues will be addressed here is entirely without merit, as it fails to recognize that both involve breach of contract claims. In Virginia, a claim for legal malpractice is one for breach of contract, not negligence. *See* Shipman v. Kruck, 267 Va. 495, 501, 593 S.E.2d 319, 322 (2004) ("although legal malpractice actions sound in tort, it is the contract that gives rise to the duty.") (citing MacLellan v. Throckmorton, 235 Va. 341, 343, 367 S.E.2d 720, 721 (1988); Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976); Va. Code Ann. § 8.01–246). The parties are asserting the same claim here and in the PA litigation—breach of contract.

B. Crawl Space contradicts the assertions it made in the PA litigation.

In its Opposition, Crawl Space flatly contradicts many of the arguments that it recently made in its Motion to Transfer Venue in the PA litigation.

There, Crawl Space stressed the similarities of the claims, and stated that both claims would be resolved if the cases were consolidated. *See* ECF 10-2, Motion to Transfer Venue at pp. 2-3, 9 (White and Williams' legal representation of Crawl Space in the NJ litigation "is the basis for the claim made by PPC for unpaid legal fees."; "the claim for unpaid fees by White & Williams will be resolved in the Malpractice case"; and "[g]iven the related issues and parties, there is a strong likelihood that the pending cases will be consolidated.").

Here in this Court, Crawl Space repeatedly asserts that the claims are dissimilar (ECF 16, Opposition to Motion to Dismiss, at pp. 1-3, 5-6, 8-12 ("In the present case, the facts and law surrounding the claim and counterclaim are almost entirely dissimilar…The claims, facts

2

considered, and law applied are wholly dissimilar"; "the issues of fact and law raised by PPC's claim and Crawl Space's claim are almost entirely unrelated to each other"; "the claim for attorney's fees filed…in the Philadelphia Court of Common Pleas is almost entirely unrelated to Crawl Space's malpractice claim in both law and fact."; "the two claims are substantially different in terms of the facts at issue and law applied in determining the merits of the claims")).

In the PA litigation, Crawl Space stressed the risk of inconsistent judgments were the cases not consolidated. ECF 10-2 at pp. 9, 11 ("Crawl Space could be found liable in the PPC case and yet prevail in the Malpractice case, leading to the inconsistent results that Crawl Space is liable for legal fees to White & Williams that White & Williams is not entitled to because of its breach of duties to Crawl Space"; "The two pending causes of action can result in one in which Crawl Space is found liable to pay legal fees and in the other Crawl Space may have judgment in its favor for legal malpractice against the same law firm.").

Here, Crawl Space repeatedly asserts that there is no risk of inconsistent judgments (ECF 16 at pp. 6-7, 9 ("PPC's claim for attorneys' fees and Crawl Space's claim for malpractice are so substantially different that there exists no possibility of inconsistent rulings."); ("if PPC were to prevail in its claim against Crawl Space in the Pennsylvania case for attorneys' fees, it would not be inconsistent or conflicting if Crawl Space were to prevail in its malpractice claim in this Court"); ("Although inconsistent rulings are an entirely legitimate concern to courts and the overall judicial process, this concern is not founded in the present instance. A ruling favorable to PPC in the Pennsylvania attorneys' fees matter and a ruling favorable to Crawl Space in the present matter will not cause inconsistencies. These results are not mutually exclusive")).

It is difficult not to view the inconsistent arguments set forth by Crawl Space as entirely disingenuous.

3

C. <u>Affirmative Defenses have no relevance to whether a counterclaim is compulsory.</u>

Crawl Space misinterprets the purpose of Fed. R. Civ. P. 13(a), specifically as to the relationship between unpaid legal fees and legal malpractice. The reasoning is that these claims stem from the same controversy between the parties—the legal representation itself. It is not an affirmative defense that creates a logical relationship between the claims, but the claims themselves. To argue otherwise is to create an artificial barrier to the application of Fed. R. Civ. P. 13(a).

Crawl Space argues that this legal malpractice action and the PA litigation involving unpaid legal fees are dissimilar because Crawl Space did not assert legal malpractice or negligence as an affirmative defense in that action. However, Crawl Space's failure to assert such affirmative defenses has no relevance to whether a counterclaim for legal malpractice in the PA litigation was compulsory. *See* <u>Painter v. Harvey</u>, 863 F.2d 329, 333 (4th Cir. 1988) ("we reject plaintiff's assertion that the counterclaim is permissive because the events of November 9, 1984 became relevant to the libel counterclaim only when plaintiff responded to that counterclaim with an affirmative defense of truth. The affirmative defense, however, followed the counterclaim much as night follows day, and indeed plaintiff could not have withheld the affirmative defense without repudiating the version of events as set forth in her original complaint. Since the counterclaim itself was not subject to the federal face of the complaint rule, the status of the counterclaim cannot be made to depend on the fact that issue is joined over the events of November 9, 1984 only by way of an affirmative defense to it. To decide otherwise would be to construct an artificial barrier to the comprehensive purposes of Rule 13(a).").

Likewise, Crawl Space's argument that *res judicata* would not bar this suit is without merit. <u>Id.</u> The court in <u>Painter</u> explained:

> We also cannot accept plaintiff's argument, based on the second inquiry under Sue & Sam, that defendant's counterclaim should be permissive because a withheld counterclaim would face no *res judicata* bar in a subsequent state proceeding. Assuming that Harvey's counterclaim might still be brought in state court, the *res judicata* test cannot be the controlling one. If the limits of the compulsory counterclaim are no broader than *res judicata*, then Fed. R. Civ. P. 13(a) would be superfluous. Commentators and courts have recognized the difficulty of using a res judicata test to distinguish between permissive and compulsory counterclaims, *see* 6 C. Wright & A. Miller, supra, at § 1410; Columbia Plaza Corp. v. Sec. Nat. Bank, 525 F.2d 620, 624 (D.C. Cir. 1975) n. 24 (D.C. Cir. 1975), and, in fact, the doctrines of preclusion have been adapted to the requirements of Fed. R. Civ. P. 13(a). *See* 6 C. Wright & A. Miller, supra, at § 1410. That is to say, 'absent a compulsory counterclaim rule, a pleader is never barred by res judicata from suing independently on a claim that he refrained from pleading as a counterclaim in a prior action.' Id.

## II. PERSONAL JURISDICTION

Crawl Space argues that White and Williams' phone calls with Crawl Space and plaintiff's counsel—who was directly involved in the NJ litigation—and its transmission of documents to Crawl Space and plaintiff's counsel, means that White and Williams "admitted that it had significant and ongoing contacts with this jurisdiction." (ECF 16 at p. 12 (citing to ECF 12-1, Affidavit of Siobhan K. Cole at ¶¶ 6, 7, 11, 12)). Contrary to Crawl Space's argument, case law is replete with findings that such contacts are insufficient for the existence of jurisdiction (*see* ECF 10, Memorandum in Support of Motion to Dismiss at pp. 7, 9-11, 14-15).

Moreover, Crawl Space relies on an inapposite case in support of its argument. In Waterside Cap. Corp. v. Hales, Bradford & Allen, LLP, No. ACTION NO. 2:05CV727, 2007 WL 657286 (E.D. Va. Feb. 27, 2007) (unreported), a Texas-based accounting firm provided accounting services for a Virginia-based client, CVI; CVI relied on those services to obtain loans from the plaintiffs and ultimately filed for bankruptcy in Virginia, defaulting on its loans. Id. at 2. The defendants' contacts consisted of contacts with "CVI's corporate offices, its former accountants, or its clients, all in the Commonwealth of Virginia", as well as phone calls, faxes,

emails with CVI and others. Id. at 6. As noted in New Venture Holdings, L.L.C. v. DeVito Verdi, Inc., 376 F. Supp. 3d 683, 693 (E.D. Va. 2019), these contacts did not only involve CVI: "after contract was signed, Defendant accounting firm contacted its client in Virginia and the client's former accounting firm in Virginia to produce audits over three years". In contrast, here, White and Williams' only contacts with Virginia were solely through Crawl Space and its counsel in this case, for the express purpose of pursuing litigation in New Jersey. Moreover, no damage is alleged to have been caused in Virginia here.

Further, Crawl Space does not address the plethora of case law stating that jurisdiction cannot exist over an out-of-state practitioner whose only contacts with the forum are that its client resided there (*see* ECF 10 at pp. 7-9, 11-12, 14, 16).

Finally, Crawl Space does not address the case law stating that the proper forum for a legal malpractice action against an out-of-state attorney is that forum where the litigation occurred. *See, e.g.*, Cape v. von Maur, 932 F. Supp. 124 (D. Md. 1996) ("case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides.") (citing Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990); Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Att'ys at L., 787 F.2d 7 (1st Cir. 1986)).

### III. CONCLUSION

Plaintiff Crawl Space's Amended Complaint against White and Williams fails to state a claim upon which relief can be granted. This Court lacks personal jurisdiction over White and Williams as the parties' contract for legal services in out-of-state litigation, communications regarding that litigation, and Crawl Space's domicile in Virginia are legally insufficient for the

existence of jurisdiction over White and Williams by this Court. For these same reasons, venue is improper in this Court. Finally, Crawl Space's claim for legal malpractice is barred as it was required to be brought as a compulsory counterclaim in the PA litigation. Therefore, White and William's Motion to Dismiss should be granted.

WHEREFORE, defendant White and Williams LLP respectfully requests that this Court grant its Motion to Dismiss, and that an Order be entered dismissing the Amended Complaint of Crawl Space Door System, Inc. d/b/a Crawl Space Door Systems, Inc., with prejudice, with an award to White & Williams for its costs, including reasonable attorneys' fees.

**WHITE and WILLIAMS LLP**

By: /s/ David D. Hudgins
David D. Hudgins

David D. Hudgins (VSB No. 20602)
William F. Gogoel (VSB No. 94765)
HUDGINS LAW FIRM, PC
2331 Mill Road, Suite 100
Alexandria, VA 22314
T: (703) 739-3300;  F: (703) 739-3700
*dhudgins@hudginslawfirm.com*
*wgogoel@hudginslawfirm.com*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 10, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Duncan G. Byers, Esq.; Va. Bar No. 48146
PATTEN, WORNOM, HATTEN & DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dbyers@pwhd.com
cveals@pwhd.com

/s/ David D. Hudgins
David D. Hudgins