

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA,
## Norfolk Division

CRAWL SPACE DOOR SYSTEM, INC.

    Plaintiff,

v.                                                     Civil Action No.: 2:19cv320

SMARTVENT PRODUCTS, INC.,

and

RISK REDUCTION PLUS GROUP, INC.

    Defendants.

## AMENDED COMPLAINT

Comes now Plaintiff Crawl Space Door System, Inc. ("Crawl Space") by counsel, and for its Amended Complaint against defendants Smartvent Products, Inc. ("Smartvent") and Risk Reduction Plus Group, Inc. ("Risk Reduction") states as follows.

## NATURE OF THE ACTION

1.    This is a civil action for violations of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*.

2.    These claims arise out of an anti-competitive scheme designed by defendant Smartvent and perpetrated in combination with defendant Risk Reduction in order to drive all competition out of the marketplace in which Smartvent competes, and in particular targeting Plaintiff Crawl Space.

## PARTIES

3.   Plaintiff Crawl Space Door System, Inc. ("Crawl Space") is a Virginia corporation with its principle office location at 5741 Bayside Road, #105, Virginia Beach, Va. 23455.

4.   Defendant Smartvent Products, Inc. ("Smartvent") is a Florida corporation that is a registered foreign corporation in New Jersey, with its principle office location at 430 Andbro Drive, Unit 1, Pitman, New Jersey 08071.

5.   Defendant Risk Reduction Plus Group, Inc., ("Risk Reduction") is a New Jersey corporation with its principle office located at 430 Andbro Drive, Unit 1, Pitman, New Jersey 08071.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction under 28 USC § 1331 and 28 USC § 1337 as the claims herein arise under Federal Statute, particularly the Sherman Antitrust Act, 15 USC § 1 *et seq*. This Court also has subject matter jurisdiction under 28 USC § 1332 as there is complete diversity among the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

7.   Venue is proper in this district under 15 USC § 22 as all defendants transact business in this venue.

## INTERSTATE COMMERCE

8.   The products at issue in this case are sold in interstate commerce, and the unlawful activities alleged in this Complaint have occurred in, and have had a substantial effect upon, interstate commerce.

**EXHIBITS**

9. Exhibit 1 to this Amended Complaint is the Declaration of Duncan G. Byers ("Declaration" or "Decl."), to which there are attached two (2) Exhibits. Decl. Ex. A consists of Volumes 1,2,3,11, and 12 of the trial transcript for the case *Smart Vent Products, Inc. v. Crawl Space Door System, Inc., doing business as Crawl Space Door Systems, Inc.*; in the United States District Court for the District of New Jersey, Case No. 13-cv-05691-JHR (the "New Jersey Case"). The relevant portions of the transcript contain testimony by Michael Graham, President and CEO of Smartvent and Thomas Little, Executive Vice President of Smartvent. Decl. Ex. B consists of the jury verdict forms for liability and damages in the New Jersey Case.

**BACKGROUND**

10. Flood vents are devices intended to be installed in crawl spaces and the like. Flood vents allow flood water to pass through foundation and other building walls, thereby relieving water pressure against a structure to avoid structural damage during flood events.

11. The Federal Emergency Management Agency ("FEMA") promulgates guidelines for flood vents, allowing flood vent manufacturers to claim that their products are "FEMA compliant" so long as their flood vents meet the FEMA guidelines.

12. The National Flood Insurance Program ("NFIP") promulgates guidelines for flood vents, allowing flood vent manufacturers to claim that their products are "NFIP compliant" so long as their flood vents meet the NFIP guidelines.

13. The marketplace for flood vents, especially flood vents that meet FEMA and NFIP requirements, was once robust and competitive with at least seven different domestic companies selling flood vents of varying designs and cost that meet those guidelines.

14. Of those competitors selling flood vents, Smartvent has specifically targeted six companies selling flood vents in direct competition with Smartvent that meet those guidelines and are known as "engineered" flood vents that are certified on a state-by-state basis.[1]

15. Through the use of illegal, anti-competitive tactics, defendant Smartvent has driven all but two of those "engineered" flood vent competitors out of the marketplace entirely.

16. As part of its plan to illegally monopolize the marketplace, Smartvent pursued claims against Crawl Space in the "New Jersey Case".

17. If Smartvent succeeds in its scheme, it will be the only provider of flood vents to all customers in the U.S. other than a single other company with ICC certification, and if the history of Smartvent's tactics is any guide, that company is already or soon will be targeted by Smartvent.

## RELEVANT MARKETS

18. The relevant markets in this case include specifically customers of flood vents as flood vents are the only products that Smarvent sells, and more importantly includes the sub-marketplace for "engineered" vents or those vents that otherwise allow a flood insurance consumer to gain reduced flood insurance rates through the use of "engineered" or other vents that meet the requirements for reduced flood insurance rates.

19. This sub-market is currently limited to only three sellers of flood vents that provide reductions in flood insurance rates: Crawl Space, Smartvent, and Flood Flaps, a company located in South Carolina (and who sells directly through Crawl Space in addition to selling through building supply companies). Only the products from these three companies are

---

[1] Flood vents can also acquire an ICC-ES (International Code Council Evaluation Service) certification, which provides certification of FEMA and NFIP compliance as well as building code compliance, and does not require certification in individual states. Other than one other company, Flood Flaps, Smartvent is the only company selling ICC-ES flood vents.

reasonably interchangeable in that they are they only ones providing flood vents that meet the criteria for a reduction in flood insurance rates; customers cannot rely upon the flood vent market as a whole for interchangeable products. Despite the relative narrow marketplace, it includes over 5 million NFIP insurance customers and "more even in the floodplain [sic] that don't have insurance." Decl. Ex. A, 527:23 – 25.

20. The tying product in this case are the flood insurance policies sold by and through Risk Reduction; the tying product therefore is sold in the insurance marketplace and not in the flood vent marketplace.

21. Geographically, the relevant marketplace is the United States as a whole (Decl. Ex. A, 502:21-23) and more specifically those areas in the United States wherein FEMA / the NFIP has identified floodplains (or flood zones). Decl. Ex. A, 28:9 – 13; 128:22 – 25; 167:21 – 168:4; 269:19 – 24 (identifying the geographic market wherein Smart Vent targets industry professionals for its disinformation campaign, further described below)[2]. Flood Zone maps showing the relevant geographic marketplace for both flood vents and flood insurance are published at https://www.fema.gov/national-flood-insurance-program-flood-hazard-mapping.

22. The same geographic marketplace, of course, applies to customers buying flood insurance through Risk Reduction.

## FACTS

23. Smartvent sells flood vents in the same markets, as described above, as Crawl Space, and is a direct competitor.

24. Smartvent engaged in a campaign intended to force Crawl Space out of the marketplace

---

[2] The page numbers referenced for Decl. Ex. A are the actual transcript page numbers, located in the upper right hand corner of the document.

25. Due to its anti-competitive actions, Smartvent's sales have increased dramatically: in 2012 Smartvent's gross sales were $3.6 million dollars; in 2013 $6.7 million dollars; in 2014 $9.5 million dollars; mid-year sales for 2015 were $4,207,536; and in 2018 were approximately $10 million dollars.  Decl. Ex. A, 216:15 – 217:6.

26. Smartvent's scheme, in conjunction with the other defendants, is predicated on a plan to drive competitors out of the marketplace through:

    a.  Falsely claiming to consumers and the general public that competitor's vents are illegal to use.

    b.  Using its greater cash flow to institute numerous sham litigation cases in order to force competitors to leave the marketplace.

    c.  Forcing competitors, in the face of untenable litigation costs, to assign over to Smartvent any rights a competitor may have in vent design and construction.

    d.  Entering into agreements with competitors to have the competitor withdraw competing products, and requiring the competitor to pay sums of money in order for Smartvent to continue litigation against other competitors in return for a share of potential damages recovered in litigation and/or settlement.

    **e.**  Causing false reports to be made to state licensing agencies claiming that engineers hired by competitors to certify flood vents have acted improperly and/or illegally.

    f.  Tying products together by creating and using Risk Reduction, an insurance company to advise customers seeking flood insurance that the products of competitors are "illegal" and/or not FEMA compliant so as to coerce

customers to not only purchase insurance through Risk Reduction but to exclusively purchase Smartvent products.

    g.   Using a patent obtained by fraud to attempt to force competitors out of the marketplace.

27. To date, through this illegal scheme, defendants have forced five sellers of engineered flood vents out of the marketplace so that only Crawl Space remains as a seller of engineered flood vents in the market, and Smartvent is actively litigating against the Crawl Space in order to force Crawl Space out of the marketplace.

28. The false reports to state licensing agencies related to engineers hired by competitors were not directed towards achieving a political result or affecting public policy, but were intended solely to use any means possible to attack competitors and force them out of the marketplace.

29. Smartvent's strategy is structured so that it targets one or two competitors at a time, but uses the same basic tactics against each one, and is premised on the idea that it can afford to outspend a competitor facing a federal lawsuit, forcing the competitor to accede to its demands.

30. Smartvent's sham litigation scheme is similar in all the cases. Smartvent brings claims for either patent infringement, unfair competition, or both, by and through the same law firm of A.J. DiMarino, P.C.

31. In each of the lawsuits filed by Smartvent against competitors (with the exception of the suit versus Crawl Space) there is the same outcome:  no case reached any full final decision on the merits and the case resolved with the defendant forced out of the marketplace and the defendant's business shuttered.

32. As noted above, other than Flood Flaps, only Smartvent remains as competition in the marketplace for engineered flood vents.

## SMARTVENT V. USA FLOODAIR VENTS, LTD.

33. Smartvent filed suit in 2010 against USA Floodair Vents, Ltd. claiming that USA Floodair Vents was, among other things, falsely claiming its flood vents were FEMA and NFIP compliant; *Smartvent, Inc. v. USA Floodair Vents, Ltd.*, in the United States District Court for the District of New Jersey, case no. 1:10cv00168. Smartvent also included claims for patent infringement.

34. The suit was stayed in 2012 pending the *Ex Parte* Reexamination of the patent in suit and an *Ex Parte* Reexamination Certificate was issued on February 12, 2014.

35. That case finally resolved in 2018 with a settlement and Stipulation of Dismissal with Prejudice entered on June 29, 2018.

36. USA Floodair Vents, Ltd. is now out of business as a result of Smartvent's actions.

## SMARTVENT V. VINYLAST, INC.

37. Smartvent filed a bare-bones suit in December of 2011 against Vinylast, Inc. claiming that Vinylast was infringing on Smartvent's US Patent No. 5,944,445 (the same patent at issue in its suit against USA Floodair Vents). *Smartvent, Inc. v. Vinylast, Inc.*, in the United States District Court for the District of New Jersey, case no. 1:11cv07071.

38. By September of 2012, Vinylast was forced to settle the matter with Smartvent, and Vinylast, Inc. is now out of business as a result of Smartvent's actions.

## SMARTVENT V. AAA LOUVERS, INC.

39. Smartvent filed suit in June of 2013 against AAA Louvers, Inc., claiming that AAA Louvers was infringing three of Smartvent's patents and also unfairly competing in the marketplace by not complying with the NFIP guidelines. *Smartvent, Inc. v. AAA Louvers, Inc.*, in the United States District Court for the District of New Jersey, case no. 1:13cv03643.

40. The case was stayed pending mediation in August of 2014, and by early 2015 the case was settled and dismissed.

41. AAA Louvers and Millworks is now out of the flood vent marketplace as a result of Smartvent's actions.

## SMARTVENT V. TED SHOOK, d/b/a AMERICAN FLOODVENT

42. Smartvent filed suit in March of 2017 against Ted Shook, claiming that Shook was infringing Smartvent's US Patent No. 5,944,445 and also unfairly competing in the marketplace by not complying with the NFIP guidelines. *Smartvent, Inc. v. Shook*, in the United States District Court for the District of New Jersey, case no. 1:17cv01579.

43. By September of 2017, Shook was forced to accede to Smartvent's demands, including being forced to assign rights in a patent that was not at issue in the lawsuit.

44. Shook and American Floodvent is now out of business as a result of Smartvent's actions.

## SMARTVENT V. CRAWL SPACE DOORS AND

## SMARTVENT'S EXCLUSIONARY CONDUCT

45. Smartvent has targeted Crawl Space directly, based upon its determination that it could not compete fairly in the marketplace against Crawl Space. Smartvent stated that if it had to compete against the Crawl Space vents that it would "instantaneously go out of business or we can't compete." Decl. Ex. A, 84:4 – 10.

46. Smartvent's goal was to be "a thorn in the side of Crawl Space Doors . . . and drive [customers]" to Smartvent. Decl. Ex. A, 479:3 – 5.

47. In part, rather than do fair comparative marketing, the goal of Smartvent as stated by one of its sales agents, was "to destroy the marketability of air vents and Crawl Space Doors without mentioning the brand names." Decl. Ex. A, 487:24 – 488:1.

48. Smartvent filed suit against Crawl Space in September of 2013 (the New Jersey case), alleging among other things that Crawl Space falsely claimed that its flood vents were FEMA and NFIP compliant. As further described below, not only was this suit objectively baseless with regards to the FEMA and NFIP compliance question, it was also subjectively baseless – Smartvent knew full well, and admitted at trial, that Crawl Space vents met the government criteria to claim FEMA and NFIP compliance and were, in addition, "engineered vents" as defined by FEMA. In fact, Smartvent has been complaining to FEMA for years that Crawl Space and others could compete against it in the marketplace simply by complying with the existing FEMA and NFIP regulations. Decl. Ex. A, 199:5 – 15.

49. Smartvent further readily admitted that physical testing of a flood vent was the single best way to determine the amount of square footage serviced by a vent and/or compliance with FEMA and NFIP (Decl. Ex. A, 425:7 – 10), and that it is in possession of a test tank built for that

purpose – and that it in fact had tested Crawl Space vents in this manner on numerous occasions (from five to eight times (Decl. Ex. A, 155:6 – 12)), but produced no evidence or witnesses related to these tests. Decl. Ex. A, 83:3 – 4; 93:21 – 94:13; 426:19 – 25.

50. During the course of the litigation, the court entered an order finding that Crawl Space's flood vents are in fact FEMA and NFIP compliant, that Smartvent "readily admit[ted]" the same in its pleadings, and dismissing those claims with prejudice. *Smartvent v. Crawl Space Doors*, Case No. 1:13cv05691, DKT. 94 (D.N.J. August 16, 2016).

51. The matter was tried in front of a jury beginning on October 7, 2019, and concluded on October 29, 2019.

52. The jury found Smartvent liable for making literally false statements regarding the coverage area of Crawl Space's flood vents (Decl. Ex. B, p. 7), that those literally false statements caused actual harm to Crawl Space "in terms of declining sales, loss of goodwill, etc." (Id. at p. 8), that Smartvent made literally false statements that Crawl Space's vents "do not comply with FEMA and/or the NFIP" (Id. at p. 9), that Smartvent's false or misleading statement that Crawl Space Doors' vents do not comply with FEMA and the NFIP caused actual harm to Crawl Space Doors in terms of declining sales, loss of goodwill, etc. (Id. at p. 10), that Smartvent made literally false statements that Smart Vent's flood vents are the "only" product certified to meet the requirements of FEMA and the NFIP (Id.), and awarded damages in the amount of $300,000.00 to Crawl Space (Id. at p. 13).

53. Despite knowing that Crawl Space flood vents are FEMA and NFIP compliant (knowledge it had for years prior to filing suit), and despite the ruling of the court in 2016, Smartvent has been and continues to attack Crawl Space in the marketplace, including telling

third parties, clients of Crawl Space, and regulators that Crawl Space flood vents are not FEMA or NFIP compliant.

54. Smartvent also provides "training" to the industry, including to surveyors, architects, code officials, and builders. Decl. Ex. A, 95:17 – 96:1. And has, in fact, been telling the entire industry for fifteen years that the Crawl Space vents are not FEMA or NFIP compliant. Decl. Ex. A, 100:18 – 21.

55. The surveyors that Smartvent "trains" are the individuals who provide elevation certificates that are necessary to get reduced flood insurance rates, Decl. Ex. A, 56:11 – 17; 57:7 – 13; 129:5 – 17, and are part of the group that Smartvent was found to have made literally false statements to. Id. at 219:3 – 22; 472:16 – 19.

56. In training surveyors, Smartvent provides them with an opportunity to have clients referred to them for work through Smartvent's website. Decl. Ex. A, 206:5 – 21; 218:3 – 12; 480:12 – 481:6 (the referral service is specifically tied to the surveyor complying with Smarvent's false information). Surveyors are also being told that use of Crawl Space vents will result in damage to a building's foundation. Id. at 518:15 – 22.

57. However, when a surveyor "trained" by Smartvent signs an elevation certificate where Crawl Space vents are being used, they are 1) admonished and 2) told that they will no longer receive referrals. Decl. Ex. A, 207:24 – 208:23.

58. In the particular event discussed above, Smartvent told the surveyor that "The code official was confused after speaking to you and that you recommended using Crawl Space Doors. We are also very confused by your recommendation. You attended our course and know that Crawl Space Doors are non-engineered openings. By attending our course you are listed as an authorized surveyor on our locator with the understanding that you will recommend the right

product for the job when it comes to flood vents." Decl. Ex. A, 208:11 – 18.  That surveyor was removed from Smartvent's website. Id. at 482:22 – 25.

59. Smartvent has also created, printed, and disseminated at least 10,000 copies (Decl. Ex. A, 567:18 -25) of a document called the "Non-engineered Opening Guide" (the "Guide") that deliberately targeted Crawl Space's vents and mischaracterized them as "non-engineered" despite knowing that Crawl Space's vents carried engineering certificates.  Decl. Ex. A, 507:10 – 19.

60. In that Guide, Smartvent deliberately and knowingly created a definition of "engineered opening" that does not comport with the definition provided by FEMA.  Smartvent defined "engineered opening" as "a mechanical opening that's activated during a flood revealing an unobstructed area for which floodwater can flow through to equalize the hydrostatic loads on the enclosure wall. These openings are performance-tested and certified to cover a square footage amount." Decl. Ex. A, 508:6-10.  The actual definition used in FEMA's Technical Bulletin 1 ("TB-1") is, however, according to Smartvent "by far the best definition of what an engineered flood opening is," Id. at 267:3 – 4.  The TB-1 definition is:  "[a]n engineered opening is an opening that is designed and certified by a registered design professional as meeting certain performance characteristics related to providing automatic entry and exit of floodwaters; the certification requirement may be satisfied by an individual certification or issuance of an Evaluation Report by the ICC Evaluation Service, Inc." Id. at 299:5 – 11.  The TB-1 definition includes Crawl Space's vents while the "definition" used by Smartvent in the Guide specifically excludes Crawl Space's vents but not its vents or those manufactured by Flood Flaps.  Id. at 509:1 – 12.

61. Smartvent knows and has known that in accordance with TB-1, to be FEMA and NFIP compliant, state by state (individual) engineering certificates such as those used by Crawl Space, serve to make Crawl Space vents with those certificates "engineered openings" and, despite that knowledge has been and continue to tell the industry that Crawl Space's vents are non-engineered vents, Decl. Ex. A, 472:16 – 23, and has been doing so since at least as early as 2008, Id. at 90:18 – 22; 95:19 – 96:2.

62. Smartvent is also well aware that disseminating that literally false information that Crawl Space vents are non-engineered that it has serious implications in the industry. Decl. Ex. A, 95:9 – 12.

63. In addition, in direct defiance of the 2016 decision of the court in the New JerseyCase that the Crawl Space vents are FEMA and NFIP compliant, Smartvent continued to train the industry that they were not. Decl. Ex. A, 113:22 – 114:11. Smartvent also continued to train the industry that vents that didn't comply with NFIP regulations would result in significantly higher insurance rates. Id. at 269:7 – 24.

64. Smartvent also took steps to drive Crawl Space off of "the top listings" in internet Searches; so rather than design a strategy to drive search traffic to Smartvent, it was designed specifically to drive search traffic away from Smartvent's specific target: Crawl Space. Decl. Ex. A, 524:10 – 12.

65. Smartvent created a document for its website specifically targeting Crawl Space entitled "Don't Be Misled" that contained the literally false representations that Smartvent had been providing to clients and the industry. Decl. Ex. A, 392:24 – 393:2; 394:19 - 21).

66. Smartvent also produced a video falsely implying that damage to a home was caused by misrepresentations by Crawl Space about its vents, when in fact the damage was caused because the vents were improperly installed, a fact it knew at the time. Smartvent posted the video on YouTube. Decl. Ex. A, 494:2 – 495:4, 16 – 21).

67. And Smartvent created content for its website alleging that Crawl Space vents could cause structural damage, and included a photo of a damaged home which Smartvent knew was not caused by the use of Crawl Space vents and, in fact, was not a home with Crawl Space vents. Decl. Ex. A, 519:12 – 520:17.

68. Smartvent controls 90-95% of the flood vent marketplace (Decl. Ex. A, 1792:5 – 11).

69. Further, by its own admission, Smartvent are the dominant source in the marketplace for disseminating information about engineered flood vents, Decl. Ex. A, 374:2 – 7, and responsible for training the surveyors whose elevation certificates are critical to uneducated homeowners seeking to reduce their flood insurance rates.  As noted above, Smartvent has developed a reward / punishment system for surveyors to keep them from providing elevation certificates for, or recommend the use of, Crawl Space vents.  Because it controls the "training" in the marketplace for the process needed to acquire reduced insurance rates, Smartvent has not only dominant market power in the engineered flood vent marketplace, it has also, based upon its falsehoods and means of coercing surveyors and others to go along with its scheme to exclude Crawl Space vents from consideration, created a dominant market power in the flood insurance marketplace.

70. The literally false information provided to the marketplace including homeowners (both through Smartvent and through Risk Reduction) was 1) clearly false, 2) clearly material, 3) clearly likely to induce reasonable reliance (they are, after all, the experts in the field known as

the "Smart Vent guys" (Decl. Ex. A, 374:2 – 7)), 4) made to buyers without knowledge of the subject matter (See, e.g., Decl. Ex. A, 326:1 – 14; 327:14 – 21; 500:1 - 2), 5) continued for prolonged periods (See, e.g., Decl. Ex. A, 375:14 – 22; 377:21 – 378:17), and 6) not readily susceptible to neutralization or other offset by rivals (Smartvent had, as noted above, removed all but two potential rivals from the marketplace).

71. Crawl Space has been and continues to be directly harmed by Smartvent's actions.

72. As a result of Smartvent's litigation and marketplace interference, as well as the threat of additional litigation brought by Smartvent, Crawl Space was forced to avoid bringing new flood vent designs to the market.

## RISK REDUCTION PLUS GROUP

73. Risk Reduction Plus Group ("Risk Reduction") was formed in 2014 in the state of New Jersey.

74. Risk Reduction is a private insurance company that provides, among other services, flood insurance. The use of FEMA-compliant flood vents allows for reduced premiums under the National Flood Insurance Program (NFIP).

75. Risk Reduction shares the same physical location as Smartvent: 430 Andbro Drive, Unit 1, Pitman NJ, 08071.

76. It is unknown if Risk Reduction shares the same ownership and control as Smartvent.

77. Risk Reduction has been tying Smartvent's products to the flood insurance it sells, in part by cooperating with Smartvent to drive competitors out of the marketplace but also by coercing customers into buying Smartvent products by providing false information to clients and potential clients about CSD's flood vents.

78. Smartvent knows that Crawl Space engages engineers who certify that the Crawl Space flood vents meet or exceed the minimum net area requirements, and thus Crawl Space's flood vents are FEMA and NFIP compliant, in addition to that issue having been ruled on in 2016 by the court in the New Jersey Case.

79. Despite that that knowledge Smartvent falsely asserted claims against Crawl Space alleging that Crawl Space was falsely claiming that its vents are FEMA and NFIP compliant. As noted above, however, that Court dismissed those claims with prejudice, finding that Crawl Space's flood vents are in fact FEMA and NFIP compliant, and that Smartvent "readily admit[ted]" the same in its pleadings. *Smartvent v. Crawl Space Doors*, Case No. 1:13cv05691, DKT. 94 (D.N.J. August 16, 2016).

80. Despite this, Smartvent and Risk Reduction continue to intentionally provide false information to customers of Crawl Space and to potential customers of Risk Reduction.

81. For example, in a March of 2019 email exchange Andrew Farrell, an insurance broker at Risk Reduction told an individual seeking an insurance quote that the Crawl Space vents installed in her property "do not cover the amount [of square footage] their certification states it does." After the customer contacted Crawl Space to ask for clarification, and was advised that Risk Reduction's assertions were wrong and, in fact, had been specifically found to be wrong by the Court in the New Jersey Case, Farrell responded to the customer that Crawl Space flood vents do not service the amount of enclosed space that they a certified to service (and thus are FEMA compliant), and that Crawl Space flood vents "do not meet the requirements of the National Flood Insurance Program . . . [and] those vents will not allow the structure to meet the reduced-premium requirements under the NFIP," statements which both Smartvent and Risk Reduction know to be false.

82. In May of 2019, Crawl Space was informed by Arkitektura, a Houston, Texas-based customer of Crawl Space, that Paul Abrams ("Abrams"), Director of Field Operations for Smartvent told them in an unannounced visit that they could not use Crawl Space flood vents; that using Crawl Space flood vents was a felony and that Arkitektura could be sued for using the vents, statements which Smartvent knows to be false.

83. In that same conversation with Arkitektura, Abrams bragged about Smartvent suing and putting other flood vent manufacturers out of business, and specifically that Smartvent had caused USA Flood Air Vents to go out of business in that manner.

84. As recently as June 14, 2019, Crawl Space discovered that a city inspector in Florida will no longer approve Crawl Space flood vents used by large customers in Florida because of false information given to the inspector regarding the operation of Crawl Space flood vents.

85. Because flood vents are sold throughout the United States, the actions by Smartvent, Risk Reduction, and  took place and are continuing to take place in interstate commerce.

86. The conspiracy actions by Smartvent and Risk Reduction have and are resulting in unreasonable burdens on the free and uninterrupted flow of goods and services in interstate commerce.

87. In addition to the ongoing marketplace harm caused by the actions of the defendants, Crawl Space and other flood vent manufacturers have and (in the case of Crawl Space) continue to expend significant amounts of money defending against baseless claims in lawsuits intended solely as anti-competitive tools.

## COUNT  I
## VIOLATION OF 15 U.S.C. § 1 (*PER SE*)

88. Crawl Space hereby realleges and incorporates by reference the allegations of preceding paragraphs as if fully set forth herein.

89. Smartvent and Risk Reduction entered into a plain agreement to divide the marketplace and remove all competition to Smartvent in the flood vent marketplace.

90. That agreement is unlawful *per se*.

91. In addition, Smartvent tying its flood vent products with the insurance offered through Risk Reduction is a *per se* violation of the Sherman Act.

92. Crawl Space and consumers of flood vents and flood insurance have been and will continue to be directly harmed by the acts of Smartvent and Risk Reduction.

**COUNT II**
**VIOLATION OF 15 U.S.C. § 1 (RULE OF REASON)**

93. Crawl Space hereby realleges and incorporates by reference the allegations of preceding paragraphs as if fully set forth herein.

94. Smartvent and Risk Reduction entered into a plain agreement to divide the marketplace and remove all competition to Smartvent in the flood vent marketplace.

95. Rather than competing on the merits, Smartvent has used threats of suit and actual lawsuits as bludgeons to force competitors out of the marketplace, litigating solely for the purpose of creating a monopoly in the marketplace. This pattern of baseless and repetitive claims are an abuse of process.

96. There is and was no legitimate, non-pretextual, procompetitive business justification for the unlawful agreement between Smartvent and Risk Reduction that outweighs its anticompetitive effects.

97. Further, there is and was no legitimate, non-pretextual, procompetitive business justification for abusing the judicial process to force competitors to either leave the marketplace or cease to exist entirely.

98. Crawl Space and consumers of flood vents and flood insurance have been and will continue to be directly harmed by the acts of Smartvent and Risk Reduction.

## COUNT III

## VIOLATION OF 15 U.S.C. § 2

99. Crawl Space hereby realleges and incorporates by reference the allegations of preceding paragraphs as if fully set forth herein.

100. Smartvent has monopolized and/or attempted to monopolize the flood vent marketplace by and through its actions.

101. Smartvent has combined and conspired with Risk Reduction to monopolize the flood vent marketplace, and committed over acts in furtherance of their unlawful conspiracy.

102. Smartvent has used predatory and anticompetitive conduct to achieve the above goals and in doing so has removed all but one flood vent competitor from the marketplace, making it dangerously probable that Smartvent will, if it has not already, achieved monopoly power.

103. Crawl Space and consumers of flood vents and flood insurance have been andwill continue to be directly harmed by the acts of Smartvent and Risk Reduction.

## PRAYER FOR RELIEF

WHERFORE, Crawl Space Doors prays for judgment against Defendants and for the following relief:

A. A declaration that the conduct alleged herein is in violation of Sections 1 and 2 of the Sherman Act;

B. Permanent injunctive relief (i) enjoining Defendants from continuing their illegal conduct; (ii) enjoining Defendants from engaging in future anticompetitive conduct with the purpose or effect of harming Crawl Space Doors in the marketplace; and (iii) requiring Defendants to take affirmative steps to dissipate the continuing effects of their prior unlawful conduct;

C. An award of Plaintiffs' damages, in an amount to be determined at trial, trebled;

D. An award of Plaintiffs' costs of suit, including reasonable attorneys' fees as provided by law; and

E. Such other and further relief as the Court deems just and proper.


JURY TRIAL DEMANDED

**CRAWL SPACE DOOR SYSTEM, INC.**


___/s/ Duncan G. Byers_____
Duncan G. Byers, Esq.
Va. Bar ID #48146
Andrew J. Dean, Esq.
Va. Bar ID #88192
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Ave., Suite 300
Newport News, VA  23062
Telephone:  (757) 223-4474
Facsimile:  (757) 249-1627
dyers@pwhd.com
adean@pwhd.com
*Counsel for the Plaintiff, Crawl Space Doors*


## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2020, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of

such filing (CM/ECF) to the following:

J. Brent Justus (VA Bar No. 45525)
Seth A. Schaeffer (VA Bar No. 74509)
Nicholas J. Giles (VA Bar No. 86584)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Phone: (804) 775-1000
Fax: (804) 775-1061
bjustus@mcguirewoods.com
sschaeffer@mcguirewoods.com
ngiles@mcguirewoods.com

*Counsel for Defendants Smart Vent Products, Inc.*
 *& Risk Reduction Plus Group, Inc.*


    /s/ Duncan G. Byers
Duncan G. Byers, Esq.
Va. Bar ID #48146
Andrew J. Dean, Esq.
Va. Bar ID #88192
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Ave., Suite 300
Newport News, VA 23062
Telephone: (757) 223-4474
Facsimile: (757) 249-1627
dyers@pwhd.com
adean@pwhd.com