IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAWL SPACE DOOR SYSTEM, INC., d/b/a CRAWL SPACE DOOR SYSTEMS, INC., | : : : |
| *Plaintiff*, | : CIVIL ACTION : Case No. 2:22-cv-004698-GAM |
| v. | : : |
| WHITE & WILLIAMS LLP, | : : |
| *Defendant*. | : : |

**WHITE AND WILLIAMS LLP'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF MOTION TO DISMISS**

Defendant White and Williams LLP ("W&W") files this Reply Memorandum in further support of its Motion to Dismiss the Amended Complaint of plaintiff Crawl Space Door System, Inc. d/b/a Crawl Space Door Systems, Inc. (hereinafter "Crawl Space"). The issue is whether Crawl Space has failed to state a claim against W&W pursuant to Fed. R. Civ. P. 12(b)(6) where it failed to bring its malpractice claim as a compulsory counterclaim in the attorneys' fees collections case before this Court, and also failed to assert its antitrust claims by way of counterclaim when it was sued by Smart Vent in 2015 in the District of New Jersey. As a consequence of the second failure, Crawl Space has no damages as a matter of law because the antitrust claims that Crawl Space contends were damaged by WW had no value.

**A. The Law of this Forum Governs the Parties' Compulsory Counterclaim Dispute.**

Plaintiff's assertion that the "inherent procedural nature" of its malpractice claim warrants application of Fourth Circuit precedent is a misstatement of well-established law. Under the Erie Doctrine, a federal court sitting in diversity must apply the law of the forum state to questions that are "substantive" and must use federal rules to govern "procedural" matters. *Erie*

*R.R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d Cir. 1991).

Plaintiff's argument in favor of "Fourth Circuit and Virginia law" must be rejected because the cases relied upon by Crawl Space apply when courts face a conflict of laws question following transfer of venue. Where the only issue before this Court is applicability of the compulsory counterclaim rule (i.e., procedural), a choice of law analysis is unnecessary. *See e.g. Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487 (1941) (holding that federal court sitting in diversity must engage in choice of law analysis to determine which state's substantive law applies). As noted by Crawl Space, where a case is transferred from one federal court district to another pursuant to 28 U.S.C. § 1404(a) "for the convenience of the parties," the transferee court must apply the choice of law rules of the transferor court. *Ferens v. John Deere Co.*, 494 U.S. 516, 530-31 (1990); *see also Van Dusen v. Barrack*, 376 U.S. 612 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."); *Arnica Mut. Life Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011) (same). However, the transferee court applies the law applicable in the forum state for a transfer ordered for improper venue or lack of jurisdiction. *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007); *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 2013 U.S. Dist. LEXIS 118427, at *17 (W.D. Pa. Aug. 21, 2013) ("the applicable choice of law rules depends on the nature of the transfer.").

Here, Crawl Space falsely asserts that this matter was transferred from the District Court of Virginia pursuant to Fed. R. Civ. P. § 1404(a) despite the November 22, 2022 Memorandum Order (attached hereto as Exhibit "A") expressly stating:

> For the reasons stated below, **the Court FINDS that it lacks personal jurisdiction over White & Williams** . . . and ORDERS this case to be TRANSFERRED to the United States District Court for the Eastern District of Pennsylvania.

*See* Exhibit A (emphasis added). Far from stating that the matter is transferred "for the convenience of the parties" under § 1404(a), the attached Order is clear that transfer was necessary for lack of personal jurisdiction pursuant to 28 U.S.C.S. § 1631.[1] Id. at 9. Neither Fourth Circuit nor Virginia law applies here, where the transferor court was never a proper forum in the first instance.

### B. Crawl Space Was Required to Assert Malpractice Claims by Counterclaim in the Pennsylvania Fee Collection Case

For the reasons and based on the cases cited by WW at pp. 7-9 of its opening memorandum, Crawl Space's response to WW's claim for unpaid legal fees should have included a counterclaim for malpractice or it was waived. There is indisputably a logical relationship between a claim for fees and a counterclaim for malpractice; they both involve the work performed by WW for Crawl Space. "The party raising the malpractice claim is in effect asserting a defense of failure to perform to the lawyer's claim for breach of contract. The testimony and documents necessary to litigate both claims are likely to be substantially the same." L. Offs. Of Jerris Leonard, P.C. v. Mideast Sys., Ltd., 111 F.R.D. 359, 361 (D.D.C. 1986).

### C. Crawl Space Has Not Refuted or Even Responded to WW'S Contention That Crawl Space was Required to Raise its Antitrust Claims by Counterclaim in the New Jersey Litigation

The New Jersey litigation began with Smart Vent filing a Complaint in the District of New Jersey against Crawl Space in 2013 for 1) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125; 2) Unfair Competition under New Jersey Statute (Amended) §§ 56:4-1 and 2; 3) Common Law Unfair Competition; 4) Negligent Misrepresentation; and 5) Federal Trademark

---

[1] The court also notes that *alternatively*, even if the Eastern District of Virginia had personal jurisdiction over W&W (which it did not), transfer would be appropriate under § 1404(a).

-3-

30205610v.1

Infringement under 15 U.S.C. § 1114 (ECF 3, Am. Compl. at ¶ 1-2). Crawl Space filed a Counterclaim for false advertising, unfair competition, and trademark cancellation (Am. Compl., ¶ 19). WW argued in its opening memorandum that Crawl Space had to raise its purported antitrust claims by counterclaim because those claims were closely related to the unfair competition and other Smart Vent claims in the New Jersey Litigation. The consequence of not doing so is that the claims are waived. Rule 13(a). Crawl Space has no claim for damages in this case because it lost nothing as a matter of law because the antitrust claims were worthless once waived.

Crawl Space does not recognize or respond to that contention. The Motion should therefore be granted on that basis alone

### D. Conclusion

Because Crawl Space did not file counterclaims for antitrust violations against Smart Vent, it waived its antitrust claims and cannot maintain an action against WW because Crawl Space in 2019 did not have valuable antitrust claims. Crawl Space also failed to assert its alleged malpractice claim against WW in response to the fee complaint, and thereby waived that claim. The Motion should be granted on either ground.

WHITE AND WILLIAMS LLP

BY: *Farzana Islam*
Farzana Islam
PA Bar ID No. 323427
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103-7395
Phone: 215.864.7018
Attorneys for Defendant,
White and Williams LLP

Dated: January 26, 2023

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CRAWL SPACE DOOR SYSTEM,
INC., d/b/a CRAWL SPACE DOOR
SYSTEMS, INC.

    Plaintiff,

v.                                                     Civil Action No. 2:22-CV-00199 (EWH)

WHITE & WILLIAMS, LLP,

    Defendant.

## MEMORANDUM ORDER

This matter is before the Court on White & Williams, LLP's ("Defendant" or "White & Williams") motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. ECF No. 9. For the reasons stated below, the Court FINDS that it lacks personal jurisdiction over White & Williams. However, in the interest of justice, the Court DENIES Defendant's Motion to Dismiss for lack of personal jurisdiction and ORDERS this case be TRANSFERRED to the United States District Court for the Eastern District of Pennsylvania. As a result, the Court does not reach a decision on Defendant's other grounds for dismissal.

### I. BACKGROUND

This is a legal malpractice action brought by a Virginia-based client, Crawl Space Door System, Inc. ("Crawl Space" or "Plaintiff"), against a Pennsylvania-based law firm, White & Williams. Am. Compl. ¶¶ 1, 9–10, ECF No. 3. The malpractice claim arises from White & Williams's representation of Crawl Space in a civil action before the United States District Court for the District of New Jersey. Am. Compl. ¶ 2. Crawl Space alleges that during White & Williams's representation of Crawl Space in the New Jersey litigation, the firm knew about facts

1

and legal theories relied on by Crawl Space in a related action before this Court. Am. Compl. ¶ 6. Although the facts and legal theories were allegedly not actionable under the pending claims in the New Jersey litigation, Crawl Space alleges that White & Williams nevertheless presented them to the New Jersey jury. Am. Compl. ¶ 5, 56. Crawl Space asserts that White & Williams's use of the facts and theories in the New Jersey case precluded it from pursuing the same theories in the Virginia litigation. Am. Compl. ¶¶ 57. Crawl Space brings a legal malpractice claim, alleging the firm failed to exercise the knowledge and skill of attorneys of ordinary ability, and seeks $30,000,000 in damages. Am. Compl. ¶¶ 55–58.

This is not the first lawsuit between the parties since the conclusion of the New Jersey litigation. On November 23, 2021, a collection agency acting on behalf of White & Williams filed a lawsuit in Pennsylvania state court against Crawl Space to recover over $670,000 in unpaid legal fees. *Phila. Pro. Collections LLC v. Crawl Space Door Sys., Inc.*, 2:21-cv-05476 (E.D. Pa. Dec. 16, 2021) (the "Pennsylvania action"). That action was removed to the United States District Court for the Eastern District of Pennsylvania on December 16, 2021. On January 6, 2022, Crawl Space filed a motion to transfer the Pennsylvania action to New Jersey. That motion was denied. Crawl Space then filed this malpractice action on May 11, 2022, and subsequently moved the Pennsylvania district court to transfer the Pennsylvania action to this Court. That motion was also denied. Now pending before the Court is White & Williams's motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim.

## II. LEGAL STANDARD

A defendant may move to dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over

the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). However, if the court resolves the 12(b)(2) motion without conducting an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When making such a ruling, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* If the Court finds that it lacks jurisdiction, it may dismiss the case or, "if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

For a federal district court to exercise personal jurisdiction over a defendant, such jurisdiction must comport with the long arm statute of the state where the district court sits and must satisfy the standards of the Fourteenth Amendment's Due Process Clause. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's longarm statute extends personal jurisdiction to the fullest amount permitted by the Due Process Clause. *Id.* (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)). As a result, the "statutory inquiry merges with the constitutional inquiry." *Id.*

To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction: general and specific. *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002) (citing

3

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). General personal jurisdiction requires that the Defendant's contacts with the state be so "continuous and systematic" that jurisdiction is established over the defendant for any conduct. *Id.* at 712. Establishing specific jurisdiction is less burdensome but only extends over conduct which connects the defendant to the state. *Id.* at 711. The Fourth Circuit has synthesized the specific personal jurisdiction inquiry to a three-part test under which the Court considers "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc.*, 293 F.3d at 712 (alterations in original) (quoting *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)). The first factor of this test is dispositive. *Consulting Eng'rs Corp.*, 561 F.3d at 278. If plaintiff does not make a prima facie showing that the defendant purposefully availed itself of the state, the court need not consider the other two prongs. *Id.* ("If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three.").

### III. DISCUSSION

### A. Personal Jurisdiction

In determining whether the Court has personal jurisdiction over White & Williams, the Court will evaluate whether it has specific jurisdiction.[1] As to the first factor, requiring that the

---

[1] The Court will not consider whether it has general jurisdiction over White & Williams because Crawl Space does not allege this point and its Complaint suggests it seeks to establish only specific jurisdiction. *See* Am. Compl. ¶ 12 ("White & Williams *purposefully availed* itself of the privilege of conducting activities in Virginia, Crawl Space's claims against White & Williams *arise out of* the activities of White & Williams directed at Virginia" (emphasis added)).

4

defendant purposefully availed itself of the privilege of conducting business in the state, the Fourth Circuit has instructed courts to consider several nonexclusive factors:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Hirsch v. Johnson*, No. 1:14cv332, 2014 WL 2916748, at *4 (E.D. Va. June 26, 2014) (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

In this case, the Amended Complaint indicates that White & Williams represented Crawl Space in litigation before the United States District Court for the District of New Jersey for approximately four years. Am. Compl. ¶¶ 20, 31. Crawl Space additionally alleges that "White & Williams reached out into Virginia and created a continuing relationship" with Plaintiff—a Virginia company—and that throughout that relationship, Defendant "sen[t] and receive[ed] innumerable messages and documents electronically and otherwise." Am. Compl. ¶ 12, ECF No. 3. While the length of the business relationship and substantial communication between the parties may be two indicia of purposeful availment, reviewing the Amended Complaint as a whole, the Court cannot conclude that White & Williams purposefully availed itself of doing business in Virginia.

Crawl Space argues that White & Williams purposefully availed itself of Virginia by contracting to provide legal services to Crawl Space, a Virginia corporation. However, numerous courts have recognized that "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *New Venture Holdings, LLC v. DeVito Verdi, Inc.*, 376 F. Supp. 3d

5

683, 692 (E.D. Va. 2019) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985) (explaining that a contract with an in-state party alone cannot establish sufficient minimum contacts, but instead the court must evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing"). Rather, there must be actions undertaken by the defendant that create a "substantial connection" with the forum state. *New Venture Holdings, LLC*, 376 F. Supp. 3d at 692 (quoting *Burger King Corp.*, 471 U.S. at 475).

Perhaps recognizing this requirement, Crawl Space's Amended Complaint additionally asserts in a conclusory fashion that White & Williams "reached out into Virginia and created a continuing relationship." Am. Compl. ¶ 12. But this allegation, even viewed in the light most favorable to Plaintiff, cannot be interpreted to mean that White & Williams solicited Crawl Space's business, an important factor in evaluating purposeful availment. *See Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *2 (4th Cir. May 30, 2000) (collecting cases and observing that "when a case involves legal representation by an out-of-state law firm, courts emphasize the importance of . . . who initiated the contact"). As noted above, entering into a contractual relationship is different than soliciting that relationship. The Amended Complaint is silent as to whether White & Williams solicited Crawl Space's business or initiated contractual negotiations, or vice versa. Further, the Amended Complaint does not allege how and where contract negotiations occurred; whether the parties contractually agreed that Virginia state law would govern their agreement; or whether attorneys for White & Williams came to Virginia during the business relationship.[2] As a result, Crawl Space's legal assertion regarding White & Williams

---

[2] As discussed above, the Court's inquiry is confined to whether Crawl Space makes a prima facie showing that the Court may exercise personal jurisdiction over White & Williams. However, the Court does note that Defendant's memorandum in support of its motion to dismiss

"reach[ing] out into Virginia," without more, does not weigh in favor of finding purposeful availment.

Plaintiff's final allegation that White & Williams "sen[t] and receive[ed] innumerable messages and documents electronically and otherwise," while weighing in favor of finding personal jurisdiction, is insufficient to meet this burden. Correspondence alone, particularly in today's digital age, is insufficient to establish personal jurisdiction. *See Hirsch*, 2014 WL 2916748, at *5 ("Correspondence alone, however, is not sufficient to establish minimum contacts that satisfy due process."). Even when considering those communications together with an existing contract, a plaintiff must allege facts regarding the extent and nature of the communications that demonstrate purposeful availment. *See e.g. Consulting Eng'rs Corp.*, 561 F.3d at 279–80 (finding that "four telephone conversations and twenty-four emails, eight of which were sent by [the defendant]" along with a contract were insufficient to establish personal jurisdiction); *Le Bleu Corp. v. Standard Capital Grp., Inc.*, 11 F. App'x 377, 380–81 (4th Cir. 2001) (upholding the district courts finding that "some mail and telephone calls" between the parties, two visits to the forum state by defendant's employees, and the fact that payment on the contract was mailed from North Carolina, were insufficient to establish purposeful availment). Crawl Space's generalized allegation fails to meet this burden.

The remaining factual allegations of the Amended Complaint weigh overwhelmingly against a finding that White & Williams purposefully availed itself of Virginia. The Amended

---

("Defendant's Memorandum") contains several allegations related to solicitation and contract formation. White & Williams alleges that Crawl Space's President contacted a partner located in the firm's Philadelphia Office and requested that White & Williams represent Crawl Space in the New Jersey litigation. Def.'s Mem., Ex. A at 13, ECF No. 10-1. That partner then sent Crawl Space an engagement letter, which Crawl Space signed and then returned to White & Williams in Pennsylvania. Def.'s Mem., Ex. A at 13.

7

Complaint alleges that White & Williams is headquartered in Pennsylvania and maintains no offices within the state of Virginia, Am. Compl. ¶ 10; that the law firm was hired by Crawl Space to defend the company in a lawsuit brought against it in the United States District Court for the District of New Jersey, Am. Compl. ¶ 17; that the case was ultimately tried in that court, Am. Compl. ¶ 31; and that the actions giving rise to the malpractice claim occurred in New Jersey, *see* Am. Compl. ¶ 15 ("The acts complained of in this matter occurred in the venue of the United States District Court for the District of New Jersey . . . and therefore substantive laws of the state of New Jersey apply."). Assessing these facts, it appears as though the parties contemplated that White & Williams's performance under the contract would occur outside of Virginia and that the locus of the parties' course of dealing was overwhelmingly directed at New Jersey. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012) ("[W]e have determined that purposeful availment was lacking in cases in which the locus of the parties' interaction was overwhelmingly abroad.").

The core of the Court's inquiry is whether—when viewing the totality of Crawl Space's allegations about White & Williams's contacts with Virginia—there is a sufficient basis to exercise specific personal jurisdiction. There is not. In essence, Plaintiff seeks to base personal jurisdiction solely on the existence of a contractual relationship with a Virginia resident and unspecified communications between the parties. These allegations are insufficient to conclude that White & Williams purposefully availed itself of Virginia. And, as outlined above, the other relevant facts alleged by Crawl Space in its Amended Complaint support the conclusion that White & Williams did not purposefully avail itself of Virginia. Because Plaintiff fails to make a prima facie showing that White & Williams purposefully availed itself of doing business in Virginia, the Court's inquiry

8

with respect to the motion to dismiss is at an end. The Court finds that it lacks personal jurisdiction over White & Williams.

Nevertheless, transfer of the case to the Eastern District of Pennsylvania is appropriate rather than dismissal. A court finding a lack of personal jurisdiction may transfer the action to "any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. This matter could have been initially brought in the United States District Court for the Eastern District of Pennsylvania. Defendant White & Williams resides in that judicial district. Accordingly, it is subject to that court's personal jurisdiction and venue would also be proper under 28 U.S.C. § 1391(b)(1). Further, that court is currently handling a related action that also stems from White & Williams's representation of Crawl Space in the New Jersey litigation, *Philadelphia Professional Collections LLC v. Crawl Space Door System, Inc.*, 2:21-cv-05476 (E.D. Pa.). As a result, the Court finds that it is in the interest of justice to transfer the case to the Eastern District of Pennsylvania rather than dismiss it.

### B. Transfer Under 28 U.S.C. § 1404(a)

Alternatively, even if the Court had personal jurisdiction over the Defendant, transfer under 28 U.S.C. § 1404(a) would likely be appropriate. "District courts within this circuit consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th. Cir 2015). Less weight than usual is accorded to Plaintiff's choice in venue considering that another district court has raised concerns about Plaintiff engaging in forum shopping related to this matter. *See Phila. Pro. Collections LLC v. Crawl Space Door Sys., Inc.*, 2:21-cv-05476, (E.D. Pa. June 3, 2022), ECF No. 14. As to the second factor, the bulk of the

evidence in this malpractice action is likely in the Eastern District of Pennsylvania where White & Williams is headquartered or in New Jersey where the trial occurred. Additionally, as previously noted, the Eastern District of Pennsylvania is already trying a related action which arises out of the same representation. Presumably, many of the witnesses would be similar, weighing in favor of transfer. Likewise, while the third factor would generally be neutral considering that Plaintiff resides in the Eastern District of Virginia and Defendant resides in the Eastern District of Pennsylvania, the Eastern District of Pennsylvania is slightly more convenient for the parties since the parties are already engaged in litigation in that court. For this same reason, it is in the interest of justice—specifically, to promote judicial efficiency and avoid inconsistent judgements—to transfer the case to the Eastern District of Pennsylvania. See *Jaffe v. LSI Corp.*, 874 F. Supp. 2d 499, 505 (E.D. Va. 2012) ("[T]he most prominent elements of [the interest of justice] are judicial economy and the avoidance of inconsistent judgments."). Accordingly, transfer under 1404(a) would likely also be appropriate.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss for lack of personal jurisdiction is DENIED. Instead, the Court ORDERS this case be TRANSFERRED to the United States District Court for the Eastern District of Pennsylvania. Defendant's other grounds for dismissal in its Motion are DENIED AS MOOT. Defendant may renew these motions in the Eastern District of Pennsylvania as it sees fit.

It is so ORDERED.

_____/s/_____
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: November 22, 2022

## **CERTIFICATE OF SERVICE**

I, Farzana Islam, hereby certify that a copy of the foregoing White and Williams LLP's Reply Memorandum in Further Support of Motion to Dismiss was served via the Court's Electronic Case Filing System on this 26th day of January, 2023 to the following:

Duncan G. Byers, Esquire
Patten, Wornom, Hatten & Diamondstein
12350 Jefferson Avenue
Suite 300
Newport News, VA 23602

Casey Green, Esquire
Sidkoff, Pincus & Green, P.C.
1101 Market Street
Suite 2700
Philadelphia, PA 19107

_____
Farzana Islam

30205610v.1