IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CRAWL SPACE DOOR SYSTEM, INC.** : | |
| : | |
| v. : | **CIVIL ACTION No. 22-4698** |
| : | |
| **WHITE & WILLIAMS, LLP** : | |

**McHUGH, J.**                                                              **June 22, 2023**

## MEMORANDUM

The question presented by this case is whether a legal malpractice claim must be asserted as a compulsory counterclaim to a contract action seeking payment of legal fees brought by the lawyers accused of malpractice. Courts have consistently held that clients must assert malpractice claims as part of any action seeking payment of fees, and judicial economy strongly favors such an approach. The client in this case refused to pay for services rendered, but instead of asserting malpractice as a defense to the law firm's contract action in this court seeking to collect, it later filed a separate case in its home state, apparently considering that a more favorable forum. That gambit failed, and its malpractice case was transferred here after the Eastern District of Virginia found a lack of jurisdiction, cogently observing that this court was already "handling a related action that also stems from" the representation in question. ECF 24 at 9. Indeed, these two claims are related, and so closely intertwined that the malpractice claim was a compulsory counterclaim that should have been asserted in the collection action. I will therefore dismiss this case because of Plaintiff's violation of Federal Rule of Civil Procedure 13(a).

I.      **Relevant Background**

      A.  **The underlying representation**

Plaintiff Crawl Space Door Systems, Inc. ("Crawl Space") is a Virginia-based company that sells flood vents. Am. Compl. ¶ 17, ECF 3, 22-4698.[1] In 2013, Smart Vent, a direct competitor, sued Crawl Space in the District of New Jersey for unfair competition, and Crawl Space counterclaimed for false advertising/unfair competition and trademark cancellation. *Id.* ¶¶ 18-19. Crawl Space initially retained other counsel but hired Defendant White & Williams as counsel in October 2015. *Id.* ¶ 20.

In 2019, Crawl Space filed a separate, parallel suit against Smart Vent with the assistance of different counsel in the Eastern District of Virginia, alleging violations of the Sherman Act. Crawl Space pleads here that, although the White & Williams attorneys were not litigating the Virginia case, they knew of the facts and legal theories underlying it and that "the basis for the claim . . . was non-commercial speech by Smart Vent giving rise to claims under the Sherman Act." *Id.* ¶ 33. In the New Jersey case, Crawl Space purportedly sought to litigate only Smart Vent's "commercial" speech.

Trial in the New Jersey case was held in 2019. *Id.* ¶ 31. White & Williams successfully defended Crawl Space in the action, allowing Crawl Space to prevail on its counterclaim and win an award of $300,000. Crawl Space alleges, however, that actions taken by White & Williams attorneys in the New Jersey case negatively impacted Crawl Space's Virginia antitrust action because they presented the jury with evidence of non-commercial speech, precluding Crawl Space from pursuing its antitrust claims against Smart Vent in Virginia. *Id.* ¶¶ 34-44.[2]

---

[1] Because I will be citing to two separate dockets, I have included the docket number for clarity.

[2] Crawl Space asserts that its Virginia antitrust case had a value of approximately $30 million, Am. Compl. ¶ 30, and that it was "precluded as a matter of law" from pursuing its claims in the Virginia antitrust action

### B. Litigation between White & Williams and Crawl Space

Following the conclusion of the New Jersey litigation, the debt collection arm of White & Williams, known as Philadelphia Professional Collections LLC ("PPC"), sued Crawl Space for breach of contract. *See Phila. Pro. Collections LLC v. Crawl Space Door Sys., Inc.*, -- F. Supp. 3d --, No. 21-5476, 2022 WL 17177268 (E.D. Pa. 2022).³ According to PPC, Crawl Space failed to pay its legal invoices for White & Williams' representation leading up to and during the New Jersey trial. Crawl Space filed an answer with no counterclaims. *See* ECF 3, 21-5476.

On May 11, 2022, while the fee collection action was pending, Crawl Space separately filed this malpractice claim in the Eastern District of Virginia. Within a month of that filing, Crawl Space filed a motion to transfer the fee collection case to the Eastern District of Virginia so that the fee collection action could be "consolidate[ed] with the Malpractice case." ECF 13 at 3, 21-5476. In support, Crawl Space represented the following:

> The parties in both the PPC case and the Malpractice case are therefore the same. In addition, the facts necessary to resolve the PPC case are a small subset of the facts that will be litigated in the Malpractice case, and the claim for unpaid fees by White & Williams *will be resolved* in the Malpractice case.

*Id.* (emphasis added). I rejected Crawl Space's request for transfer, observing that Crawl Space appeared to be forum shopping.⁴ ECF 14, 21-5476.

---

because evidence of non-commercial speech was presented in New Jersey. A review of the docket from that action does not reflect any order by the Court resolving that issue.

³ I may take notice of the docket in another case and the documents within that docket to "determine what statements they contained." *See Orabi v. Att'y General of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999); *Rankin v. Majikes*, No. 14-699, 2014 WL 6893693, at *7 (M.D. Pa. Dec. 5, 2014).

⁴ I had already denied a motion to transfer the action to the District of New Jersey, concluding that the balance of convenience did not favor transfer. ECF 7, 21-5476.

3

The fee litigation case proceeded to summary judgment. Crawl Space represented that it failed to pay its invoices because it ran out of money and raised a defense contending that White & Williams had been overcharging and double billing for its services. But because it put forth no evidence to support its defenses, I entered summary judgment in favor of PPC. Crawl Space did not appeal.

Simultaneously, the Eastern District of Virginia concluded that it did not have personal jurisdiction over White & Williams in this malpractice action. *See* ECF 24 at 5, 8, 22-4698 ("Plaintiff seeks to base personal jurisdiction solely on the existence of a contractual relationship with a Virginia resident and unspecified communications between the parties."). As a result, it transferred the case to the Eastern District of Pennsylvania under 28 U.S.C. § 1631, and it was assigned to my docket. *Id.* at 9. White & Williams then moved to dismiss. ECF 27, 22-4698.

## II.   Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion

White & Williams argues that Crawl Space's malpractice claim is barred because Crawl Space was required to assert it as a compulsory counterclaim in the prior fee litigation and failed to do so. I agree.

### A.   This issue is controlled by Third Circuit precedent.

As a threshold matter, Crawl Space argues that because this case was transferred from the Eastern District of Virginia, it must be resolved according to the law of the Fourth Circuit. Its argument is based on the premise that when an action is transferred for the convenience of the parties under 28 U.S.C. § 1404(a), the transferee court must apply the law of the transferor

jurisdiction.  But this case was not transferred for reasons of convenience; it was transferred under 28 U.S.C. § 1631 to salvage Plaintiff's claim after the Eastern District of Virginia explicitly concluded that it could not exercise personal jurisdiction over White & Williams.  ECF 24 at 9, 22-4698.  In cases where there was no personal jurisdiction or where venue was improper in the original forum, the law of the transferee court applies.  *See Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 164-65 (3d Cir. 1980) *rev'd on other grounds*, 454 U.S. 235 (1981) (holding that where a transfer occurs due to lack of personal jurisdiction, the transferee court applies its own state's laws and not the transferor court's law); *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983); *Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588-89 (8th Cir. 2007).  To hold otherwise "may encourage procedural gamesmanship" on the part of plaintiffs seeking the application of advantageous law that should not apply to the dispute. *Eggleton*, 495 F.3d at 588.[5]  Although it is far from clear that Fourth Circuit law would result in a different outcome, Third Circuit law controls regardless.

### B. Crawl Space's malpractice claim is barred because it was a compulsory counterclaim to the fee litigation.

Federal Rule of Civil Procedure 13(a) states: "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." In *Transamerica Occidental Life Insurance Company v. Aviation Office of America, Inc.*, the Third Circuit defined a compulsory counterclaim as follows:

---

[5] Many of the cases analyzing this issue do so in reference to 28 U.S.C. § 1406(a), permitting transfer if the district court in which the case was originally brought was an improper venue.  But the foundational principle remains the same for transfers under 28 U.S.C. § 1631 for lack of jurisdiction: the rule serves to "prevent forum shopping, and to deny plaintiffs choice-of-law advantages to which they would not have been entitled in the proper forum." *Nelson*, 716 F.2d at 643.

> For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim "bears a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). The concept of a "logical relationship" has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." *Id.* Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties. *See id.*; *Great Lakes Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961). In short, the objective of Rule 13(a) is to promote judicial economy, so the term "transaction or occurrence" is construed generously to further this purpose.

292 F.3d 384, 389-90 (3d Cir. 2002).

Significantly, "[a] compulsory counterclaim not raised in the first action is barred in subsequent litigation." *Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1220 (3d Cir. 1978). This rule aims to "prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962). Thus, Rule 13(a) is essentially a rule of judicial economy, aimed to reduce the heavy burden placed on the judicial system and promote efficiency. *See Babul v. Relmada Therapeutics, Inc.*, No. CV 15-2937, 2016 WL 233699, at *9 (E.D. Pa. Jan. 20, 2016) (McHugh, J.).

Here, with Crawl Space claiming that White & Williams committed malpractice while representing it in the New Jersey litigation, and White & Williams having sued for fees, it seems self-evident that both claims have as their focus counsel's representation in the underlying action. *Id.*; *see L. Offs. Of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*, 111 F.R.D. 359, 361 (D.D.C. 1986) ("[I]t is hard to imagine a clearer compulsory counterclaim to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the handling of the litigation for which fees are sought."); *Computone Corp. v. Derieux*, No. 93-3368, 1994 WL 29594, at *2 n.5 (E.D. Pa. Jan. 28, 1994) ("A claim for legal malpractice is a compulsory counterclaim to an action for attorney's

fees covering the same litigation."); *D'Jamoos v. Griffith*, 368 F. Supp. 2d 200, 204-05 (E.D.N.Y. 2005) ("[C]ourts hold that legal malpractice claims and counterclaims for legal fees arising from that litigation are 'logically related.'"); *cf. Matthews v. Owens*, No. 13-1071, 2015 WL 5380857, at *2 (S.D. Ohio Sept. 15, 2015) ("[A] counterclaim for attorney's fees in response to a legal malpractice action is a compulsory counterclaim.").[6] Because the malpractice claim arises out of the same representation at issue in the fee litigation, the claim is a clear "offshoot[] of the same basic controversy between the parties." *See Transamerica Occidental Life Ins. Co.*, 292 F.3d at 390. Crawl Space's malpractice claim is therefore barred, as it failed to assert it as a counterclaim to the fee litigation.

Moreover, Crawl Space itself affirmatively argued that the collection action was logically related to its malpractice claims in moving to transfer that action to the Eastern District of Virginia. Specifically, it represented "the facts necessary to resolve the [unpaid fees] case are a small subset of the facts that will be litigated in the Malpractice case, and the claim for unpaid fees by White & Williams *will be resolved* in the Malpractice case." ECF 13 at 3, 21-5476 (emphasis added). It now disingenuously reverses course to argue that "the two claims consider almost entirely different facts and are unrelated." ECF 32 at 9, 22-4698. Plaintiff cannot have it both ways.

None of Crawl Space's arguments convince me otherwise. Crawl Space is correct that the issue of negligence was not addressed in the fee litigation, but that misses the point of Rule 13: it *should* have been addressed because of the logical nexus. Crawl Space is also correct that different legal standards govern contract and tort claims. But "there need not be precise identity of issues

---

[6] Other courts have found more generally that "a tort action stemming out of the same transaction as a breach of contract claim is a compulsory counterclaim to the contract action." *L. Offs. Of Jerris Leonard, P.C.*, 111 F.R.D. at 361; *see Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1080 (5th Cir. 1984) ("Failure to bring a compulsory tort counterclaim in an action on the contract will bar a later independent action on the tort."); *see also Babul*, 2016 WL 23699, at *9 (holding that plaintiff should have brought breach of contract claim in response to prior suit for breach of fiduciary duty).

and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389 (citing *Xerox Corp.*, 576 F.2d at 1059).  And the malpractice claim was wholly within Crawl Space's contemplation at the outset of the collection action.  In seeking transfer to Virginia, it criticized White & Williams' filing in this District as preemptive, stating, "Crawl Space had engaged counsel (not the undersigned) for the purpose of initiating an investigation into potential legal malpractice liability on behalf of White & Williams, and White & Williams was on notice that Crawl Space was investigating a malpractice claim against it [when it filed the unpaid fees claim]." ECF 13, 21-5476.  It thus seems clear that Crawl Space took a strategic gamble in choosing not to assert its malpractice claim in the hope that it could transfer the collection case to its home state of Virginia.  But there was never a basis on which to assert jurisdiction over White & Williams in Virginia, as evidenced by quick transfer of the malpractice action.  And the result of Plaintiff's forum shopping has been to occupy the federal courts with three separate cases to resolve a dispute properly addressed in one.  This is precisely the type of waste that Rule 13 was designed to address, and as a result Crawl Space is barred from pursuing this claim.

**IV.     Conclusion**

   Defendant's motion to dismiss will be granted.  An appropriate order follows.

                    /s/ Gerald Austin McHugh
                    United States District Judge